WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RANCE LENTZ,                          )
                                      )
                          Plaintiff,  )
                                      )
      vs.                             )
                                      )
COMMISSIONER, SOCIAL SECURITY         )
ADMINISTRATION,                       )
                                      )          No. 4:18-cv-0025-HRH
                          Defendant.  )
_____)


O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff Rance Lentz has timely filed his

opening brief,[1] to which defendant, the Commissioner of the Social Security Administration,

has timely responded.[2]  Oral argument was requested but is not deemed necessary.

Procedural Background

On August 2, 2015, plaintiff filed an application for disability benefits under Title II

of the Social Security Act, alleging that he became disabled on February 27, 2015.  Plaintiff

_____

[1]Docket No. 12.

[2]Docket No. 13.

-1-

alleged that he was disabled due to ulcerative colitis, IgA pemphigus, migraines, rheumatoid arthritis, depression, kidney stones, and uveitis. Plaintiff's application was denied initially. Plaintiff requested a hearing. After an administrative hearing on January 31, 2018, an administrative law judge (ALJ) denied plaintiff's application. On May 2, 2018, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 5, 2018, decision the final decision of the Commissioner. On July 2, 2018, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

## General Background

Plaintiff was born on February 6, 1979. He was 38 years old at the time of the administrative hearing. Plaintiff has a high school education. Plaintiff's past relevant work includes work as an auto mechanic, heavy equipment mechanic, and heavy equipment operator.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2020."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 17.

[4]The five steps are as follows:

      Step one: Is the claimant presently engaged in substantial

(continued...)

At step one, the ALJ found that plaintiff had "engaged in substantial gainful activity during the following periods: February 27, 2015 through March 31, 2015" but that "there has been a continuous 12-month period[] during which the claimant did not engage in substantial gainful activity."[5] The ALJ noted that his "remaining findings address the period[] the claimant did not engage in substantial gainful activity."[6]

At step two, the ALJ found that plaintiff had "the following severe impairments: longstanding history of ulcerative colitis status post bowel resection surgery; hemiplegic headaches and associated mild hemiparesis on the right side; migraine headaches;

---

[4](...continued)
> gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 17.

[6]Admin. Rec. at 17.

hypertension; major depressive disorder; generalized anxiety disorder; possible malingering; [and] possible conversion disorder. . . ."[7]  The ALJ found plaintiff's septum secundum and IgA pemphigus non-severe and that rheumatoid arthritis, fibromyalgia, and a seizure-like condition were "nonmedically determinable impairments."[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. . . ."[9]  The ALJ considered Listings 4.00 (cardiovascular system), 5.00 (digestive system), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders).  The ALJ considered the "paragraph B" criteria and found that plaintiff had moderate limitations as to understanding, remembering, and applying information; mild limitations as to interacting with others; moderate limitations with regard to concentration, persistence, or pace; and moderate limitations as to adapting or managing oneself.[10]  The ALJ found that the "paragraph C" criteria were not met.[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th

---

[7]Admin. Rec. at 17-18.

[8]Admin. Rec. at 18.

[9]Admin. Rec. at 18.

[10]Admin. Rec. at 19-20.

[11]Admin. Rec. at 20.

Cir. 2009).  The ALJ found that plaintiff had the

> residual functional capacity to perform light work as defined in
> 20 CFR 404.1567(b) except the claimant is additionally limited
> to:  sitting for six hours, and standing/walking for a combined
> total of five hours during an eight-hour workday; occupations
> that would permit a sit/stand option allowing the claimant to
> alternate between sitting and standing positions throughout the
> day without going off task; frequent pushing/pulling with the
> right upper extremity; occasional overhead reaching with the
> right upper extremity; occasional stooping, kneeling, crouching,
> crawling[,] and climbing of ramps or stairs; no climbing of
> ladders, ropes, or scaffolds; no exposure to unprotected heights;
> occasional exposure to moving and hazardous machinery;
> occupations that would allow reasonable use of the restroom;
> simple, routine and repetitive tasks; [and] no high-paced
> production quotas or changes in the workplace setting.[12]

The ALJ gave Dr. Lebeau's opinion[13] great weight.[14]  The ALJ gave little weight to

---

[12]Admin. Rec. at 20.

[13]Jack Lebeau, M.D., testified as a medical expert at the administrative hearing.  Dr.
Lebeau opined that plaintiff could lift/carry 10 pounds frequently and 20 pounds occasion-
ally; could sit for 6 hours total, 2 hours at a time, but would need at least one bathroom break
during those 2 hours; could stand for 3 hours in a day, 1 hour at a time; and could walk for
1/2 hour; could reach overhead with the right hand occasionally; could do other reaching
with the right hand frequently; handling, fingering, and feeling with the right hand could be
continuous; pushing/pulling with the right hand would be frequent; had no limitations as to
use of the left hand; could use his feet continuously; could occasionally balance, stoop, kneel,
crouch, and crawl; could never be around unprotected heights; could be around moving
mechanical parts occasionally; could occasionally drive; and had no limitations as to
humidity, heat, cold, vibrations, dust, and fumes.  Admin. Rec. at 60-62.

[14]Admin. Rec. at 24.

Dr. Hanley's December 2017 opinion.[15] The ALJ gave Dr. Lace's opinion[16] great weight.[17]

The ALJ gave little weight to the opinion of Josie Barry, M.A.[18] The ALJ gave some

weight[19] to the opinions of Dr. Fraser[20] and Dr. Kiehl.[21] And, the ALJ gave little weight[22] to

---

[15]Admin. Rec. at 24. Dr. Hanley's opinions are discussed below in detail.

[16]Michael Lace, Ph.D., testified as a medical expert at the administrative hearing. Dr. Lace opined that plaintiff had moderate limitations as to understanding, remembering or applying information; mild limitations in terms of interacting with others; moderate limitations as regards concentration, persistence, and pace; and moderate limitations as to adapting and managing oneself. Admin. Rec. at 66. Dr. Lace also opined that plaintiff would be limited "to simple, routine, repetitive tasks with low production quotas, perhaps daily quotas at most, and no fast-paced tasks" and "no changes . . . in the routine tasks that he performs, and no changes in terms of the tasks themselves [and] no change in the location where those tasks are performed." Admin. Rec. at 67.

[17]Admin. Rec. at 24.

[18]Admin. Rec. at 25. Barry's opinion is discussed below in detail.

[19]Admin. Rec. at 24.

[20]On September 20, 2016, Shirley Fraser, M.D., opined that plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for 6 hours; sit for 6 hours; had no limitations as to pushing/pulling; had no postural or manipulative limitations; and should avoid concentrated exposure to extreme heat, noise, vibration, fumes, odors, dust, gases, and poor ventilation. Admin. Rec. at 106-107.

[21]On October 19, 2016, Royal Kiehl, M.D., opined that plaintiff was moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but otherwise had no significant limitations. Admin. Rec. at 108.

[22]Admin. Rec. at 25.

the lay testimony of Lou Ann Fett[23] and Kim Wood.[24]

The ALJ found plaintiff's pain and symptom statements less than credible because they were inconsistent with the medical evidence.[25]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work. . . ."[26]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including working as an assembler, basket filler, or garment sorter.[27]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from February 27, 2015, through the date of this decision. . . ."[28]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of

---

[23]Fett, plaintiff's mother-in-law, provided written statements on July 19, 2016 and January 11, 2018. Admin. Rec. at 292-298 and 352.

[24]Kim Wood, plaintiff's aunt, provided an undated written statement. Admin. Rec. at 350.

[25]Admin. Rec. at 24.

[26]Admin. Rec. at 25.

[27]Admin. Rec. at 25-26. This finding was based on the testimony of the vocational expert, Bill Weiss. Admin. Rec. at 80-82.

[28]Admin. Rec. at 27.

the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred as to Dr. Hanley's January 15, 2017 opinion. On January 15, 2017, Dr. Hanley, who was plaintiff's primary care physician, opined that plaintiff could continuously lift/carry 10 pounds; could frequently lift/carry 20 pounds; could occasionally lift/carry up to 100 pounds; could sit for 4 hours; could stand/walk for 2 hours; could occasionally climb stairs/ramps; could never climb ladders/scaffolds; could frequently balance and stoop; could occasionally kneel, crouch, and crawl; could never be around

unprotected heights, dust, fumes, odors, or pulmonary irritants; could occasionally be around

moving mechanical parts; could occasionally operate a motor vehicle; could frequently be

around humidity and wetness; and could occasionally be around extreme cold, extreme heat,

and vibrations.[29] Dr. Hanley also opined that plaintiff would be unable to work when having

a headache and that he would be absent from work more than four times a month because of

his headaches.[30] On December 26, 2017, Dr. Hanley wrote that plaintiff

> has a significant inherited disease that has limited his ability to
> seek employment or remain in a position of employment on a
> regular basis. He has had numerous hospitalizations over the
> past years, which have included surgical as well as medical
> interventions. He has both physical and mental health compo-
> nents to his condition. He is often physically capable, but has
> unpredictable and frequent exacerbations of his disease process
> that require urgent medical attention and would indeed prevent
> him from working. These include transient changes to his
> eyesight, increased pain, recurrent infections, heart arrhythmias,
> to name a few of his impairments. He has had these limitations,
> most of his adult life, but worsened in February 2015 based on
> my review of the medical record. I would foresee his limitations
> as outlined above persisting into the foreseeable future.[[31]]

The ALJ rejected Dr. Hanley's December 2017 opinion because it was not supported

by his treatment notes.[32] Plaintiff does not challenge this finding. Rather, plaintiff argues

that the ALJ erred as to Dr. Hanley's January 2017 opinion because the ALJ did not even

---

[29]Admin. Rec. at 3200-3204.

[30]Admin. Rec. at 3199.

[31]Admin. Rec. at 3155.

[32]Admin. Rec. at 24.

mention this opinion. Defendant concedes that it was error for the ALJ to not consider Dr.

Hanley's January 2017 opinion and that this error was not harmless.[33]

Plaintiff next argues that the ALJ erred as to Dr. Curns' report. Dr. Curns evaluated

plaintiff on November 21, 2017 and wrote that plaintiff had

> clinical depression, anxiety, severe somatic symptoms, social
> withdrawal, and extreme psychological turmoil. He is isolated
> from others and has unusual beliefs and eccentric behaviors.
> Mr. Lentz has a strong potential for having a conversion
> disorder that worsens in times of stress. He has difficulty
> making decisions and he has low self-esteem. Mr. Lentz is
> socially awkward and is likely to have problems with work and
> in relationships. He has limited psychological resources for
> handling stress and he may have symptoms of PTSD.[[34]]

The ALJ did not address Dr. Curns' report, which was based on a battery of tests, other than

to note that Dr. Curns had stated that plaintiff's clinical presentation should be viewed with

caution due to an "'over-reporting of symptoms.'"[35] Defendant concedes that the ALJ erred

in not considering Dr. Curns' evaluation and that this error was not harmless.[36]

Plaintiff next argues that the ALJ erred by rejecting Dr. Martino's opinion. Dr.

Martino treated plaintiff's headaches and depression.[37] But, as defendant aptly points out,

---

[33]Defendant's Responsive Brief [etc.] at 2, 4, Docket No. 13.

[34]Admin. Rec. at 3151.

[35]Admin. Rec. at 24.

[36]Defendant's Responsive Brief [etc.] at 2, 4, Docket No. 13.

[37]Admin. Rec. at 613-618; 661-663.

Dr. Martino did not offer any opinions. What plaintiff takes issue with is the fact that the ALJ did not mention a June 15, 2015 treatment note, in which Dr. Martino noted that plaintiff reported that "diesel fumes can be a trigger" for his headaches.[38] Plaintiff argues that the ALJ should have considered this notation because it is consistent with Dr. Hanley's opinion that plaintiff should avoid all exposure to fumes.

There was no error as to Dr. Martino's treatment notes. The reference to diesel fumes being a trigger was a self-report, not a determination that was made by Dr. Martino.

Finally, plaintiff argues that the ALJ erred in rejecting the opinion of Josie Barry. On January 9, 2018, Barry opined that plaintiff had no limitations in his ability to interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; moderate limitations in his ability to understand/remember/carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, accept instructions and respond appropriately to criticism from others, get along with coworkers and peers without distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation; and extreme limitations in his ability to remember locations and work-like procedures, understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods of time, perform activities within a

_____

[38]Admin. Rec. at 614.

-11-

schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with others or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of and length of rest periods, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others, and tolerate normal levels of stress.[39] Barry also opined that plaintiff would miss 28 days of work per month because of his mental impairments and that she did not "believe that he could work on a regular basis" because "[h]is mental impairment is tied to his physical impairments making it very difficult for him to have a lot of 'good days.'"[40]

The ALJ rejected Barry's opinion because Barry opined that plaintiff had extreme limitations.[41] The ALJ stated that

> Barry must not be familiar with what an extreme limitation means under the Social Security Administration's rules and regulations, as someone with extreme limitations . . . would likely require assisted living, and would not likely be able to function to the extent the claimant has maintained, including ongoing long work days as recent [as] February 2016.[[42]]

The ALJ also gave Barry's opinion little weight because of "the general lack of support in

---

[39]Admin. Rec. at 3172-3174.

[40]Admin. Rec. at 3174.

[41]Admin. Rec. at 25.

[42]Admin. Rec. at 25.

the record for" the limitations she assessed.[43]

Barry, as a licensed therapist, is not an accepted medical source. Therefore, her opinion is treated as lay testimony. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff argues that the first reason given for rejecting Barry's testimony, that she did not understand what extreme meant in the Social Security context, was not germane because the form on which Barry expressed her opinion defined "extreme." Specifically, "extreme" was defined as "[t]he ability to function in this area is precluded."[44] Given that the form that Barry used defined the term in question, it was disingenuous for the ALJ to reject her opinion on the basis that she must not have understood what "extreme" meant.

However, the ALJ also rejected Barry's opinion because it was not supported by the other evidence in the record. This reason was germane to Barry's testimony and was a sufficient reason for the ALJ to reject Barry's opinion. The ALJ did not err in rejecting Barry's opinion.

But, because the ALJ erred as to Dr. Hanley's January 2017 opinion and Dr. Curns' report, the court must consider whether to remand this matter for an award of benefits or for

---

[43]Admin. Rec. at 25.

[44]Admin. Rec. at 3172.

further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). Here, the ALJ did not fail to provide legally sufficient reasons for rejecting Dr. Hanley's January 2017 opinion and Dr. Curns' report. Rather, the ALJ ignored this evidence. But, because there was legally harmful error here, the first step is satisfied.

"Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "[A]dministrative proceedings are generally useful where the record has [not] been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time[.]" Treichler v. Comm'r of Social Sec. Admin., 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations omitted).

Because Dr. Hanley's January 2017 opinion was contradicted by Dr. Lebeau's opinion, defendant argues that the ALJ should be given an opportunity to resolve this conflict. As for Dr. Curns' report, defendant points out that Dr. Curns did not make any specific functional limitations, and thus defendant contends that the ALJ needs to address how Dr. Curns' findings might be reconciled with Dr. Lace's opinion.

Had the ALJ only erred as to Dr. Curns' report, the court would agree with defendant that further development of the record would be helpful. But, the ALJ also erred as to Dr. Hanley's January 2017 report. As to Dr. Hanley's January 2017 report, no further development of the record is necessary. Dr. Hanley opined that plaintiff's impairments would cause him to miss a good deal of work. Specifically, in his January 2017 opinion, Dr. Hanley opined that plaintiff would be unable to work when having a headache and that he would be absent from work more than four times a month because of his headaches.[45] While the evidence reflects that plaintiff's headaches improved somewhat after his patent foramen ovale closure surgery,[46] his headaches did not go away completely.[47] Moreover, the record shows that plaintiff was frequently hospitalized due to his physical impairments. For example, from January 2017 through October 2017, plaintiff was hospitalized five times for issues related to his headaches and ulcerative colitis.[48] There is nothing in Dr. Lebeau's opinion for the ALJ to reconcile as this issue. Dr. Lebeau testified that plaintiff "sounds like a person who, most days of his life, is afflicted. It must be a rare day that he's not."[49] Dr. Lebeau believed that none of plaintiff's doctors had "detail[ed]" how much work he might

---

[45]Admin. Rec. at 3199.

[46]Admin. Rec. at 1112-1113.

[47]Admin. Rec. at 3164.

[48]Admin. Rec. at 1256, 1279, 1310, 1392, 1762.

[49]Admin. Rec. at 53.

miss,[50] but that was plainly incorrect. In his January 2017 opinion, Dr. Hanley addressed the

amount of work that plaintiff would miss on a regular basis due to his impairments. No

further development of the record on this issue is necessary.

Third, in order for a remand for benefits to be appropriate, the court "must conclude

that 'if the improperly discredited evidence were credited as true, the ALJ would be required

to find the claimant disabled on remand.'" Brown-Hunter, 806 F.3d at 495 (quoting

Garrison, 759 F.3d at 1021). Put another way, the court must "'determine whether the

record, taken as a whole, leaves not the slightest uncertainty as to the outcome of [the]

proceeding.'" Leon v. Berryhill, 880 F.3d 1041, 1044 (9th. Cir. 2018) (quoting Treichler,

775 F.3d at 1101).

Plaintiff argues that the ALJ would be required to find him disabled if Dr. Hanley's

January 2017 opinion were credited as true. Because Dr. Hanley opined that plaintiff could

not be around fumes, an opinion that is supported by Dr. Martino's note that diesel fumes are

a trigger for his headaches, plaintiff argues that there would no work for him pursuant to SSR

85-15. SSR 85-15 provides, in relevant part, that "[w]here an individual can tolerate very

little noise, dust, etc., the impact on the ability to work would be considerable because very

few job environments are entirely free of irritants, pollutants, and other potentially damaging

conditions."

But, SSR 85-15 does not establish that plaintiff would be disabled if a limitation were

---

[50]Admin. Rec. at 54.

added to his RFC that he could never be around fumes in the workplace. There is no

evidence currently in the record that an individual with such a limitation would be disabled.

Nonetheless, if Dr. Hanley's January 2017 opinion is credited as true, the record,

taken as a whole, leaves not the slightest uncertainty that plaintiff would be disabled. Dr.

Hanley opined that plaintiff would miss at least four days of work each month. Weiss

testified that if a person has two or more "unscheduled absences" per month, "the person's

not going to retain employment."[51]

But, "even if all three requirements are met," which they are here, the court "retain[s]

'flexibility' in determining the appropriate remedy" and "may remand on an open record for

further proceedings 'when the record as a whole creates serious doubt as to whether the

claimant is, in fact, disabled within the meaning of the Social Security Act.'" Brown-Hunter,

806 F.3d at 495 (quoting Garrison, 759 F.3d at 1021). The record here does not create

serious doubt as to whether plaintiff is, in fact, disabled. Rather, the record as a whole leaves

no doubt that plaintiff could not maintain full-time employment.

### Conclusion

The Commissioner's final decision is reversed and this matter is remanded for an

award of benefits.

DATED this 14th day of December, 2018.

/s/ H. Russel Holland
United States District Judge

---

[51]Admin. Rec. at 82.